| | | |
|---|---|---|
| **SHARI LAVELLE HARRIS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| ———————————————— | ) | |

**THIS MATTER** is before the Court on Petitioner's pro se Motion to Vacate, Set Aside or

Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 1).

## I.     BACKGROUND[1]

Petitioner was charged in the underlying criminal case with: Count One, Hobbs Act

robbery of a QT convenience store (18 U.S.C. § 1951); Count Two, brandishing a firearm in

furtherance of a crime of violence, *i.e.* the Hobbs Act robbery charged in Count One (18 U.S.C. §

924(c)); Count Three, Hobbs Act robbery of a 7-Eleven convenience store (18 U.S.C. § 1951); and

Count Four, brandishing a firearm in furtherance of a crime of violence, *i.e.* the Hobbs Act robbery

charged in Count Three (18 U.S.C. § 924(c)). (3:17-cr-298 ("CR") Doc. No. 1) (Bill of Indictment).

Petitioner agreed to plead guilty to Counts One through Three and admitted his guilt as

charged of those offenses. (CR Doc. No. 12). In the written Plea Agreement, Petitioner

acknowledged his sentencing exposure of: a minimum mandatory of 20 years' imprisonment for

Counts One and Three; a minimum consecutive term of seven years' imprisonment and a

maximum of life for Count Two. (CR Doc. No. 12 at 1-2). The Plea Agreement states that: the

---

[1] This section is not exhaustive. Additional relevant details will be addressed in the Discussion section.

1

Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the sentence that Petitioner might receive is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum and would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw the plea as a result of the sentence imposed. (CR Doc. No. 12 at 2).

The parties agreed to jointly recommend that Petitioner's plea is timely for purposes of Guidelines § 3E1.1. (CR Doc. No. 12 at 2). The parties remained free to argue their respective positions regarding any other specific offense characteristics, reductions, and enhancements, as well as departures or variances from the applicable guideline range pursuant to § 5C1.1. (Id.).

The Plea Agreement provides that: Petitioner stipulated to the existence of a factual basis to support his guilty plea as required by Rule 11(b)(3); he read and understood the written Factual Basis that was filed with the Plea Agreement; and the Factual Basis may be used by the Court and Probation Office for any purpose unless the Factual Basis explicitly reserves the Petitioner's objection. (CR Doc. No. 12 at 4). The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right to be tried by a jury, to be assisted by an attorney at trial, to confront and cross-examine witnesses, and not to be compelled to incriminate himself. (CR Doc. No. 12 at 4). Petitioner expressly waived the rights to contest his conviction and/or sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. (Id.). The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." (CR Doc. No. 12 at 5).

2

The Factual Basis that was filed along with the Plea Agreement contains no objections and provides, in relevant part:

> On June 13, 2017 at approximately 3:19 a.m., the defendant, Shari Harris, knowingly and intentionally affected commerce by robbery in that he brandished a firearm and took cash belonging to the QT gas station located at 7205 The Plaza, Charlotte, North Carolina. The QT gas station operates as a retain gas station and convenience store, carrying a wide variety of products including food and personal care items obtained from vendors located throughout the United States in and affecting interstate commerce.
>
> Also on June 13, 2017 at 4:05 the defendant, Shari Harris, knowingly and intentionally affected interstate commerce by robbery in that he brandished a firearm and took cash belonging to the 7/11 Gas Station located at 8101 Old Concord Road in Charlotte, North Carolina. The 7/11 gas station operates as a retail gas station and convenience store, carrying a wide variety of products including food and personal care items obtained from vendors located throughout the United States in and affecting interstate commerce.

(CR Doc. No. 13 at 1-2) (paragraph numbers omitted).

On March 29, 2018, a United States Magistrate Judge conducted a plea hearing pursuant to Rule 11 at which Petitioner was represented by counsel. (CR Doc. No. 34) (Rule 11 Hearing Transcript). Petitioner stated, under oath, that he received a copy of the Indictment, fully understood the charges including the maximum and minimum penalties, discussed it with counsel, and wanted the Court to accept his guilty plea to Counts One through Three. (CR Doc. No. 34 at 4-8). Petitioner admitted his guilt on those counts. (CR Doc. No. 34 at 11). Petitioner stated that he understood the rights he was waiving by pleading guilty including the right to plead not guilty, have a speedy trial, and summon and confront witnesses. (CR Doc. No. 34 at 8-9). Petitioner stated that he spoke to counsel about how the sentencing guidelines may apply to his case, the Court would not be able to determine the applicable sentencing guidelines range until after the Presentence Investigation Report ("PSR") had been prepared, Petitioner may receive a sentence that is lower or higher than that called for by the guidelines, and Petitioner would still be bound by his plea even if the sentence was more severe than expected. (CR Doc. No. 34 at 9).

He also stated that he understood that, if he went to trial, he would have the assistance of a lawyer, would not be required to testify, would be presumed innocent, and the Government would have to prove his guilt beyond a reasonable doubt. (CR Doc. No. 34 at 10). Petitioner stated that he understood that he was waiving these rights by pleading guilty. (CR Doc. No. 34 at 10-11). Petitioner stated that he understood the terms of the Plea Agreement, which were summarized in open court ,and agreed with them including the waiver of his appellate and post-conviction rights. (CR Doc. No. 34 at 11-14). Petitioner stated that he read the Factual Basis, talked to counsel about it, understood it, and agreed with it. (CR Doc. No. 34 at 14-15). Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, or made any promises other than the terms of the Plea Agreement. (Id.). Petitioner stated that he had enough time to discuss possible defenses with counsel and was satisfied with counsel's services, stating "I appreciate it." (CR Doc. No. 34 at 15).

The PSR sets forth the offense conduct consistent with the Factual Basis. (CR Doc. No. 18 at ¶¶ 5-6). The PSR incorporates information from the United States Attorney's Statement of Relevant Conduct that provides *inter alia*:

> Investigation revealed that a Grey Hyundai Elantra had recently been stolen and fit the description of the car used in the first robbery. A BOLO was issued for the Hyundai Elantra. On June 13, 2017, an officer on patrol spotted the vehicle on Tryon Street in Charlotte, however, the driver fled the scene at a high rate of speed. A CMPD Officer[] spotted the vehicle again later that day. The Officer attempted a traffic stop however the driver of the vehicle turned off his lights, and fled at a high rate of speed. The vehicle crashed into a median as the driver attempted to pass another car. The driver and passenger fled on foot. The driver of the vehicle was eventually located and identified as defendant SHARI HARRIS.

> Robbery detectives compared the surveillance photos from both robberies to the arrest mugshot of Shari Harris and observed that they all appeared identical. A latent fingerprint was developed from a pack of cigars touched by the defendant during the second (7/11 gas station) robbery. The latent print was determined to be from the defendant SHARI HARRIS.

4

(CR Doc. No. 18 at ¶¶ 10-11) (emphasis added).

The PSR calculated the base offense level for Count One as 20 because the offense is a violation of § 1951. (CR Doc. No. 18 at ¶ 18). Two levels were added pursuant to U.S. Sentencing Guidelines § 3C1.2 because Petitioner recklessly created a substantial risk of death or serious bodily injury to another in the course of fleeing from law enforcement. (CR Doc. No. 18 at ¶ 22). This resulted in an adjusted offense level subtotal for Count One of 22. (CR Doc. No. 18 at ¶ 23). The base offense level for Count Three was also 20 for a § 1951 violation. (CR Doc. No. 18 at ¶ 24). Five levels were added because a firearm was brandished pursuant to § 2B1.3(b)(2)(C) and two levels were added for endangerment during flight pursuant to § 3C1.2. (CR Doc. No. 18 at ¶¶ 25, 28). This resulted in an adjusted offense level subtotal for Count Three of 27. (CR Doc. No. 18 at ¶ 29). After applying the multiple count adjustment pursuant to § 3D1.4, the combined adjusted offense level was 28. (CR Doc. No. 18 at ¶¶ 30-33). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 25. (CR Doc. No. 18 at ¶¶ 35-37). The sentence for Count Two is the term of imprisonment required by statute. (CR Doc. No. 18 at ¶ 38). Petitioner had six criminal history points and two more points were added because Petitioner committed the instant offense while under a criminal justice sentence. (CR Doc. No. 18 at ¶¶ 47-48). The total criminal history score was eight and the criminal history category was IV. (CR Doc. No. 18 at ¶ 49). The resulting advisory guideline imprisonment range was 84 to 105 months for Counts One and Three and seven years, consecutive, for Count Two. (CR Doc. No. 18 at ¶¶ 83-85).

The sentencing hearing came before the Court on April 5, 2019. (CR Doc. No. 35). Petitioner stated that he read the PSR, understood it, and had enough time to review it with counsel. The parties agreed that the PSR correctly determined the advisory range to be 84 to 105 months'

5

imprisonment for Counts One and Three, and 84-months, consecutive, for Count Two. (CR Doc. No. 35 at 3). Defense counsel sought a downward variance, arguing that the Court should sentence the Petitioner to a total of 84 months' imprisonment based on factors including his history and characteristics. (CR Doc. No. 35 at 4-5); see (CR Doc. No. 22) (Sealed Sentencing Exhibits). Petitioner and his mother addressed the Court. (CR Doc. No. 35 at 11, 13). Petitioner stated that he "admit[s] that [he] was wrong" and apologized to the victim and his family. (CR Doc. No. 35 at 13-14). The Government asked the Court to impose a guideline sentence of 84 months for Counts One and Three, plus a consecutive 84-month term for Count Two, because of factors including the Petitioner's extensive criminal history and the serious and traumatic nature of the offenses. (CR Doc. No. 35 at 14-16). The Court considered all of the relevant factors, including deterrence, protection of the public, the seriousness of the offenses, and Petitioner's "remarkable criminal history." (CR Doc. No. 35 at 17-20). In a Judgment entered on May 1, 2019, it sentenced Petitioner to 96 months' imprisonment for Counts One and Three and 84 months, consecutive, for Count Two followed by three years of supervised release. (CR Doc. No. 26) (Judgment). Petitioner sought to appeal the 180-month sentence on direct appeal, Fourth Cir. Case No. 19-4335. The Fourth Circuit Court of Appeals dismissed the appeal on February 5, 2020 because the issue that Petitioner sought to raise was barred by the appellate waiver in Petitioner's Plea Agreement. (CR Doc. No. 38).

On January 6, 2021,[2] Petitioner filed the instant § 2255 Motion to Vacate.[3] (Doc. No. 1). He argues (renumbered and restated): (1) the guilty plea was involuntary and the Court's

---

[2] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prison mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

[3] On January 29, 2021, the Court ordered Petitioner to file pages that were missing from the § 2255 Motion to Vacate. (Doc. No. 2). Petitioner filed a Response attaching two pages. (Doc. No. 3).

6

acceptance of the plea was plain error; (2) trial counsel was ineffective for: (i) coercing Petitioner to plead guilty, (ii) failing to adequately investigate and prepare for the case; and (iii) performing inadequately with regards to sentencing; and (3) appellate counsel was ineffective. (Doc. No. 1). Petitioner seeks the appointment of counsel, an evidentiary hearing, withdrawal of the guilty plea, and vacatur of the conviction and sentence.

The Government filed a Response arguing that the claims are waived, procedurally defaulted, and meritless. (Doc. No. 5). Petitioner did not reply.

Meanwhile, in the criminal case, Petitioner filed a *pro se* Motion to Dismiss that was docketed on February 12, 2021. (CR Doc. No. 41). The Court dismissed the Motion to Dismiss on February 17, 2021, because the criminal case was no longer pending. (CR Doc. No. 42).

## II.     SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b). After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved

7

without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION[4]

Petitioner challenges the voluntariness of his guilty plea and raises a number of allegations of ineffective assistance of counsel. They will be addressed in turn.

### (1) Involuntary Plea

First, Petitioner contends that his plea was involuntarily entered and that the Court plainly erred by accepting his guilty plea without determining whether a factual basis existed and ensuring that Petitioner understood the nature of the charges by having the Indictment read into the record. He also argues that the appellate and post-conviction waivers should not be enforced against him because, at the time he waived those rights, he did not know how the Court would rule on various sentencing issues. (Doc. No. 1-1 at 14-15).

Before accepting a guilty plea, a district court must conduct a plea colloquy in which it informs the defendant of, and determines if the defendant comprehends, the nature of the charge to which he is pleading guilty, the maximum possible penalty he faces, any mandatory minimum penalty, and the rights he is relinquishing by pleading guilty. Fed. R. Crim. P. 11(b)(1); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). The court must also ensure that the plea is supported by an independent factual basis and is not the result of force, threats, or promises outside the plea agreement. Fed. R. Crim. P. 11(b)(2), (3). As a general matter, "a plea does not qualify as intelligent unless a criminal defendant first received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" See generally

---

[4] The Petitioner's claims have been renumbered and restated. Any argument not specifically addressed in this Order has been considered and rejected.

Bousley v. United States, 523 U.S. 614, 618 (1998)) (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)).

However, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Id. at 621. A § 2255 motion is not a substitute for direct appeal. See United States v. Frady, 456 U.S. 152, 167-68 (1982). Claims of error that could have been raised before the trial court and on direct appeal, but were not, are procedurally defaulted from § 2255 review unless the petitioner shows both cause for the default and actual prejudice, or demonstrates that he is actually innocent of the offense. See Bousley, 523 U.S. at 621; United States v. Bowman, 267 F. App'x 296, 299 (4th Cir. 2008). "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). To show prejudice, a petitioner must demonstrate that errors in the proceedings "worked to his actual and substantial disadvantage" and were of constitutional dimension. See Frady, 456 U.S. at 170. To show actual innocence, a petitioner must demonstrate that he "has been incarcerated for a crime he did not commit." United States v. Jones, 758 F.3d 579, 584 (4th Cir. 2014); see also McQuiggin v. Perkins, 569 U.S. 383, 393 (2013) ("a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims … on the merits notwithstanding the existence of a procedural bar to relief.").

Petitioner's present claims that his plea was involuntary and that the Court plainly erred by accepting it are procedurally defaulted from federal habeas review. Petitioner failed to challenge the voluntariness of his plea on direct appeal, and he has failed to demonstrate cause and prejudice or actual innocence. Although Petitioner argues that ineffective assistance of counsel constitutes "cause," this argument is unavailing because Petitioner's claims of ineffective assistance of

9

counsel are meritless. See Section (2), *infra.* Petitioner does not appear to raise actual innocence and any such claim would fail because Petitioner has not come forward with any evidence of his factual innocence.

These claims are also conclusively refuted by the record. The Rule 11 hearing transcript reveals that the guilty plea was knowingly and voluntarily entered with a full understanding of the charges and the plea's consequences in compliance with Rule 11. Petitioner stated, under oath, that he understood: the charges; his minimum and maximum sentencing exposure; the rights he was waiving by pleading guilty including the right to plead not guilty, have a speedy trial before a judge and jury, to summon witnesses to testify on his behalf, and to confront witnesses against him; and the consequences of his guilty plea including the waiver of his appellate and post-conviction rights. (CR Doc. No. 34 at 9-11). He further admitted, under oath, that he is guilty as charged, and that he was freely and voluntarily pleading guilty without any threats, intimidation, or force, or promises other than those contained in the Plea Agreement. (CR Doc. No. 34 at 11, 15). Petitioner's present self-serving claim that his plea was not knowingly and voluntarily entered are rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Petitioner further challenges the enforceability of his appellate and post-conviction waivers. An appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). The Fourth Circuit

does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement. See Lemaster, 403 F.3d at 200. There are narrow exceptions to the enforceability of plea waivers such that "even a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims." United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005). For instance, because "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court[,] ... a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Marin, 961 F.2d at 496 (emphasis added).

Petitioner presently contends that these waivers should not be enforced against him because he did not know, at the time he agreed to the waivers, what the Court's sentencing calculation would be. This claim is conclusively refuted by the record, which demonstrates that the Petitioner knew: his minimum and maximum sentencing exposure; the sentenced had not yet been determined; a PSR would be completed; the parties would be able to argue the applicability of various sentencing factors, departures, and variances; the Court would be able to impose any sentence up to the statutory maximum; and Petitioner would not be able to withdraw his plea on the basis of the sentence imposed. See (CR Doc. No. 12 at 1-2). Petitioner voluntarily waived his appellate and post-conviction rights except for claims of prosecutorial misconduct or ineffective assistance of counsel with full knowledge of the foregoing. (CR Doc. No. 12 at 4-5). He agreed under oath at the Rule 11 hearing his understanding that "the right to appeal [his] conviction and/or [his] sentence has been expressly waived in the plea agreement…." of the appellate and post-conviction waivers. (CR Doc. No. 34 at 13-14).

Accordingly, Petitioner's claim that his guilty plea was not knowing and voluntary and that the appellate and post-conviction waivers are not enforceable are dismissed as procedurally defaulted and, alternatively, denied on the merits.

**(2)** <u>**Ineffective Assistance of Trial Counsel**</u>

The Petitioner raises a number of claims of ineffective assistance of counsel. The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. <u>See</u> U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." <u>Id.</u> at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." <u>Harrington v. Richter</u>, 562 U.S. 86, 104 (2011) (quoting <u>Strickland</u>, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. <u>See</u> <u>Strickland</u>, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. A petitioner "bears the burden of affirmatively proving prejudice." <u>Bowie v. Branker</u>, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. <u>Strickland</u>, 466 U.S. at 670.

      **i.**     **Plea Voluntariness**

12

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process.  See Missouri v. Frye, 566 U.S. 134 (2012).  Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process.  Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013).  Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

Here, Petitioner contends that counsel "coerced" him to plead guilty by failing to prepare for trial and pressuring Petitioner to believe that pleading was his "only option."  (Doc. No. 1 at 4).  Petitioner further contends that counsel failed to: "adequately advise Petitioner … that if he proceeded to a jury trial that it would be his right to take the stand and testify in his own behalf;" investigate and familiarize herself with all the facts of the case in relation to the guilty plea; explain to Petitioner the "importance, distinction, and consequences" of the U.S. Sentencing Guidelines as associated with the offenses of conviction; inform him of the consequences of pleading guilty; and lodge any objections at the Rule 11 hearing.  (Doc. No. 1-1 at 5-6). Petitioner argues that he would have proceeded to a jury trial but for counsel's allegedly deficient performance. (Id.).

Petitioner's arguments are meritless. His contentions that counsel coerced him to plead guilty by failing to prepare for trial and telling him that pleading was his only option are conclusively refuted by Petitioner's sworn statements at the Rule 11 hearing. He stated that his

13

plea was knowingly and voluntarily entered without any threats, intimidation, or promises, and with an understanding of the consequences of his plea including his sentencing exposure and applicability of the U.S. Sentencing Guidelines. See Section (1), *supra*. Any suggestion that counsel's failure to investigate and prepare a defense is conclusively refuted by Petitioner's statement that he had enough time to discuss any possible defenses with counsel and was satisfied with counsel's services. (CR Doc. No. 34 at 15). Moreover, this claim is vague and conclusory in that Petitioner fails to identify any information favorable to the defense that would have been uncovered by further investigation. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court."). Petitioner's contention that counsel failed to inform him that he would be allowed to testify at a jury trial is also refuted by the record. The Court informed Petitioner that, by pleading guilty, he was waiving the rights "to have a speedy trial before [a] judge and jury, to summon witnesses to testify in [his] behalf, and to confront witnesses…" and that, because of his guilty plea, "[w]e're not going to have a trial. There will be one more hearing where the District Judge will determine a sentence to impose in your case." (CR Doc. No. 34 at 10-11). Petitioner stated he understood. (Id.). The foregoing statements demonstrate that Petitioner understood that the was waiving the right to present witness testimony, including his own, at a trial. Further, this argument is insufficient in that Petitioner claims only that counsel failed to tell him that he had a right to testify at trial, not that he was unaware of such right. His claim of ignorance is belied by his extensive criminal history. See Parke v. Raley, 506 U.S. 20, 37 (1992) (noting that evidence of defendant's experience with criminal justice system is relevant to determining whether his waiver of constitutional rights was done knowingly); United States v. White, 366 F.3d 291, 296 (4th Cir. 2004) (claims that are "palpably incredible" and "patently

14

frivolous" in light of the Rule 11 hearing can be summarily dismissed); <u>see</u>, <u>e.g.</u>, <u>Pheasant v.</u> <u>United States</u>, 2012 WL 3870508 (W.D.N.C. Sept. 6, 2012) (denying petitioner's claim that counsel was ineffective for failing to inform him of his right to testify because he alleged only that counsel did not so inform him, not that he was unaware of the right to testify, and his extensive criminal history demonstrated beyond a doubt that he was aware of his right to testify). Finally, Petitioner's vague arguments that counsel failed to inform him of the consequences of the plea and should have raised objections at the Rule 11 hearing are too vague and conclusory to support relief. <u>See</u> <u>Dyess</u>, 730 F.3d at 359 ("vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court.").

Petitioner has also failed to demonstrate prejudice. Petitioner's self-serving claim that he would have proceeded to trial but for counsel's allegedly deficient performance is belied by the record, which demonstrates that it would not have been objectively reasonable for Petitioner to proceed to trial. The Plea Agreement resulted in the dismissal of a second § 924(c) charge that would have carried a 25-year mandatory consecutive sentence. (CR Doc. No. 18 at ¶ 86). The Plea Agreement also resulted in a three-level reduction for acceptance of responsibility. Further, there was strong evidence of Petitioner's guilt as demonstrated by the Factual Basis and the Statement of Relevant Conduct as set forth in the PSR. <u>See</u> <u>United States v. Santiago</u>, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); <u>see</u>, <u>e.g.</u>, <u>United States v. Fugit</u>, 703 F.3d 248, 259 (4th Cir. 2012) (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming). Therefore, Petitioner's claim that counsel's ineffective assistance rendered his guilty plea involuntary is denied.

### ii.     Pre-Plea Assistance

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

Petitioner contends that counsel rendered ineffective assistance prior to entry of the guilty plea by failing to: adequately investigate the case; seek a pretrial hearing about the admissibility of Rule 404(b) evidence; adequately communicate with Petitioner; and develop and present a theory of defense. (Doc. No. 1-1 at 4, 6, 12).

Petitioner's knowing and voluntary guilty plea waived the allegations of ineffective assistance of counsel that preceded it, including counsel's allegedly inadequate communication, failure to investigate, and handling of evidentiary issues.[5] The plea also excused counsel from further investigating the case and preparing a defense. Accordingly, this claim is dismissed.

### iii.     Sentencing Claims

When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance."  Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

Petitioner argues that counsel was ineffective for: failing to object to the enhancement for a high speed chase; failing to adequately address his lack of a father figure while he was growing

---

[5] Petitioner's claim that counsel's failure to adequately prepare coerced him to plead guilty has been discussed in the preceding section.

16

up; presenting confusing information and failing to correct misinformation about Petitioner having witnessed a shooting; failing to correct the prosecutor's misstatement that Petitioner's prior larceny was a breaking and entering charge; failing to object to "erroneous information contained in the [PSR] eliciting 'prejudice' to the Court." (Doc. No. 1 at 18).

First Petitioner contends that counsel should have objected to the § 3C1.2 enhancement for fleeing from law enforcement officers. This enhancement applies "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer…." U.S.S.G. § 3C1.2. The enhancement is "intended to capture 'behavior that could be viewed as an obstruction of justice,' and thus requires that a defendant be aware that he or she is fleeing from a law enforcement officer." United States v. Shell, 789 F.3d 335, 347 (4th Cir. 2015) (quoting United States v. Hayes, 49 F.3d 178, 183 (6th Cir. 1995)).

Counsel noted at the sentencing hearing that Petitioner had led police on a high-speed chase but noted that no actual physical injury to a victim occurred. (CR Doc. No. 35 at 4). Counsel's statement is consistent with petitioner's concession in the § 2255 Motion to Vacate that he was involved in a "motor vehicle high speed chase which lasted approximately two (2) minutes…." (Doc. 1-1 at 4). He presently argues that the § 3C1.2 enhancement does not apply because the chase "was not associated in any way with the robberies that had occurred a day earlier." (Doc. No. 1-1 at 4). Petitioner's present claim that a one-day delay between the offense and the high-speed chase renders the enhancement inapplicable is unavailing; § 3C1.2 contains no requirement that the flight occur immediately after the offense. Rather, the information in the PSR reflects that Petitioner was aware that he was fleeing from law enforcement officers, as officers had attempted to conduct a traffic stop and Plaintiff turned off the vehicle's lights; the enhancement was properly applied. See (CR. Doc. No. 18 at ¶ 10). Petitioner has failed to come forward with any basis to

17

object to the enhancement that had a reasonable probability of success. See generally Lockhart v. Fretwell, 506 U.S. 364, 374 (1993) (a defendant is not prejudiced if his counsel fails to make an objection that is "wholly meritless under current governing law").

Next, Petitioner argues that counsel did not adequately address Petitioner's lack of a father figure while growing up and provided misinformation about Petitioner having witnessed a shooting. Counsel obtained an expert to evaluate Petitioner and submitted a Report addressing issues including Petitioner's lack of a father figure; having witnessed violence; his cousin's murder by Petitioner's mother's boyfriend; the shooting death of Petitioner's friend; and his overall lack family stability. See (CR Doc. No. 22-1). At the sentencing hearing, counsel noted that: Petitioner "did not have a father figure in his life" except for a cousin who was murdered; he grew up with individuals in his life who were involved in criminal activity; and several people who Petitioner cared for had died. (CR Doc. No. 35 at 5-6). The Court acknowledged Petitioner's difficult upbringing at the sentencing hearing but ultimately determined that factors including deterrence, protection of the public, Petitioner's extensive criminal history, and the serious nature of the offenses did not justify a below-guideline sentence. See generally (CR Doc. No. 35). Petitioner has failed to identify any evidence or argument in this regard that reasonable counsel would have presented that had a reasonable probability of resulting in a lower sentence.

Next, Petitioner contends that counsel was ineffective for failing to correct the prosecutor's misstatement at the sentencing hearing that the Petitioner had a breaking and entering conviction for stealing laptop computers from a high school, whereas the conviction was actually for larceny. This refers to a larceny conviction that is included in the PSR where Petitioner stole nine laptops from Vance High School. (CR Doc. No. 18 at ¶ 44). The prosecutor referred to that offense at the sentencing hearing during a discussion of Petitioner's extensive criminal history and pattern of

18

recidivism. The prosecutor noted in that regard that Petitioner "was 15 years old, 16 years old. He must have been a student at Vance High School when he broke in and stole nine laptop computers. That's at a young age. Unfortunately that pattern has continued. And that pattern suggests that there is a legitimate need to protect the public in this case…." (CR Doc. No. 35). Reasonable counsel could have declined to object to the prosecutor's statement that Petitioner "broke in and stole" the laptops because the offense is accurately reflected in the PSR, and the prosecutor's discussion was meant to point out Petitioner's early criminal history and recidivism rather than to highlight the offense itself. Moreover, there is no reasonable probability that this comment, or counsel's failure to object, had any affect on the sentence whatsoever.

Finally, Petitioner faults counsel for failing to object to "erroneous information contained in the [PSR] eliciting 'prejudice' to the Court." (Doc. No. 1-1 at 6). This claim is too vague and conclusory to support relief because Petitioner fails to identify the erroneous information to which he refers or explain how counsel's failure to object affected his sentence in any way. See Dyess, 730 F.3d at 359. The Petitioner's claims of ineffective assistance of counsel with regards to sentencing will therefore be denied.

### iv. Cumulative Error

Finally, Petitioner contends that "trial counsel's cumulative unprofessional errors and omissions deprived Petitioner of due process.…" (Doc. No. 1-1 at 7).

As set forth above, the claims of error that Petitioner has set forth in the § 2255 Motion to Vacate are without merit. Generally, if none of a defendant's claims warrants relief individually, a court will decline to reverse for cumulative error. United States v. Basham, 561 F.3d 302, 330 (4th Cir. 2009). Petitioner has failed to demonstrate individual errors and his claim of cumulative error is conclusory. Therefore, this claim is denied.

19

**(3)** **Ineffective Assistance of Appellate Counsel**

Finally, Petitioner appears to assert a claim of ineffective assistance of appellate counsel. The right to the effective assistance of counsel extends to direct appeal. <u>Bell v. Jarvis</u>, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." <u>Smith v. Murray</u>, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy.") (internal quotations marks and citations omitted). However, appellate counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." <u>United States v. Mason</u>, 774 F.3d 824, 828-29 (4th Cir. 2014). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal … with the strength of the arguments that were raised." <u>United States v. Allmendinger</u>, 894 F.3d 121, 126 (4th Cir. 2018). To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. <u>Smith v. Robbins</u>, 528 U.S. 259, 285–86 (2000); <u>see</u> <u>also</u> <u>United States v. Mannino</u>, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under <u>Strickland</u> is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

Petitioner contends that his "plea of guilty and acceptance of the Plea Agreement were constitutionally involuntary, unknowing, and unintelligently entered into … as a direct result of

ineffective assistance of counsel rendered by … appellate counsel." (Doc. No. 1-1 at 11). This claim is self-defeating insofar as appellate counsel was appointed to represent Petitioner on appeal on July 3, 2019, more than a year after Petitioner pleaded guilty on March 29, 2018, and could not have affected the voluntariness of Petitioner's guilty plea. See (CR Doc. No. 36). To the extent that Petitioner means to suggest that counsel should have presented, on direct appeal, the claims that Petitioner has raised in the § 2255 Motion to Vacate, this too fails. Because "[t]he underlying arguments are meritless … it could scarcely be ineffective of appellate counsel not to raise them." Coley v. Bagley, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."); see Schneider v. United States, 864 F.3d 518 (7th Cir. 2017) (appellate counsel was not ineffective for failing to raise trial counsel's alleged ineffective assistance on direct appeal because the complaints about trial counsel were meritless). Petitioner's claim of ineffective assistance of appellate counsel is therefore denied.

IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss and deny Petitioner's § 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED that:**

1.    Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** with prejudice and **DENIED**.

2.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

21

debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3.    The Clerk is instructed to close this case.

Signed: June 15, 2021

Robert J. Conrad, Jr.
United States District Judge